UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ROSEMARY JEAN-BAPTISTE,

        Petitioner,

v.                                                                      Case No. 3:26-cv-484-MMH-LLL

SECRETARY MARKWAYNE
MULLIN, et al.,

        Respondents.

_____

## **ORDER**

### **I. Status**

Petitioner Rosemary Jean-Baptiste, an immigration detainee, initiated this action through counsel by filing a Verified Petition for Writ of Habeas Corpus (Doc. 1; Petition) on February 5, 2026, in the Fort Myers Division of the Middle District of Florida. The assigned judge subsequently transferred the action to the Jacksonville Division. See Order (Doc. 8). The Federal Respondents (Secretary Markwayne Mullin,[1] Acting Attorney General Todd Blanche,[2] Acting Director Todd Lyons, Director Garrett Ripa, Interim Field

---

[1] On March 24, 2026, Markwayne Mullin was sworn in as Secretary of the Department of Homeland Security, replacing Kristi Noem. Pursuant to Rule 25(d), Federal Rules of Civil Procedure (Rule(s)), Mullin is automatically substituted as a party for Noem.

[2] Pursuant to Rule 25(d), Blanche is automatically substituted as a party for Pamela Bondi.

Office Director Juan Agudelo, and United States Immigration and Customs Enforcement (ICE)) filed a Response to Petition for Writ of Habeas Corpus (Doc. 13; Response) with exhibits (Docs. 13-1 through 13-3). Respondent Warden filed a Motion to Dismiss (Doc. 13; Motion to Dismiss), arguing he is not a proper respondent in this case. Jean-Baptiste has filed counseled Replies (Docs. 14, 15). This case is ripe for review.

## II. Jean-Baptiste's Petition

Jean-Baptiste was born in the Bahamas to Haitian parents on February 24, 1969. Petition at 7. According to Jean-Baptiste, she is neither a citizen of the Bahamas, nor a citizen of Haiti. Id. Jean-Baptiste entered the United States with her parents when she was six years old, and she has resided here continuously since that time. Id. at 5. Jean-Baptiste has two United States citizen children and four United States citizen grandchildren. Id. at 7.

In 2002, Jean-Baptiste was convicted of possession of a controlled substance and was sentenced to 180 days in jail. Id. On September 6, 2002, an immigration judge ordered Jean-Baptiste removed to the Bahamas. Id. at 8. ICE subsequently placed Jean-Baptiste on an Order of Supervision (OSUP). Id.

On December 12, 2025, ICE detained Jean-Baptiste. Id. Jean-Baptiste alleges that as of the date she filed the Petition, she "has not had any interview, formally or informally, with any ICE officers." Id. In her Petition, Jean-

2

Baptiste alleges her detention violates due process (Counts One and Two); the revocation of her OSUP violated due process because ICE failed to follow its own regulations, which require notice of the reasons for revocation and a prompt informal interview, and she is entitled to release under Zadvydas v. Davis, 533 U.S. 678 (2001), because there is no significant likelihood of her removal in the reasonably foreseeable future (Count Three); and the revocation of her OSUP violates the Accardi[3] doctrine (Count Four). Petition at 17–24. She requests immediate release. Id. at 25.

### III. Merits of Count Three

The Court first considers the merits of the OSUP claim in Count Three because it is dispositive. Notably, the Federal Respondents fail to address Jean-Baptiste's claim in their Response. See generally Response. However, Jean-Baptiste clearly raises such a claim in her Petition, see Petition at 21–22, and the Federal Respondents had ample time to respond to the Petition. Therefore, despite the Federal Respondents' silence on this issue, the Court proceeds with its analysis.

In the context of revoking a noncitizen's supervised release, Department of Homeland Security (DHS) regulations require written notice and an informal interview that allows the noncitizen to respond. See 8 C.F.R. §§

---

[3] United States ex rel. Accardi v. Shaughnessy, 347 U.S. 260 (1954).

3

241.4(*l*)(1), 241.13(i)(3). While § 241.4 generally applies to noncitizens detained pending removal, its "custody review procedures . . . do not apply after the [United States Citizenship and Immigration Services] has made a determination . . . that there is no significant likelihood that an alien under a final order of removal can be removed in the reasonably foreseeable future." 8 C.F.R. § 241.4(b)(4). In those cases, § 241.13 governs the procedures for revocation.

In the Petition, Jean-Baptiste argues that the revocation of her OSUP violated due process because ICE failed to follow its own regulations. Petition at 21–22. First, Jean-Baptiste posits that "[t]here was no determination that there is a significant likelihood that [she] may be removed in the reasonably foreseeable future as required by 8 C.F.R. [§] 241.13(i)(1) or (2)." Id. at 22. "Alternatively, even if [she] was released initially on an OSUP pursuant to 8 C.F.R. § 241.4, the revocation is flawed" because she was not provided with notice or an informal interview. Id.

Here, no record evidence suggests that ICE previously released Jean-Baptiste because it determined that there was no significant likelihood of removal. Instead, the Notice of Revocation of Release issued to Jean-Baptiste on March 2, 2026—nearly three months after her detention—states, that her release "has been revoked pursuant to 8 C.F.R. § 241.4(*l*)." Doc. 13-3 at 1.

4

Therefore, the Court will consider the propriety of revocation under that regulation.

The Court finds that contrary to its regulations and procedure, ICE failed to provide Jean-Baptiste with notice and an informal interview to contest the revocation of her OSUP. Pursuant to § 241.4(*l*)(1), DHS may take into custody a noncitizen who violates the conditions of her OSUP. "Upon revocation [of an OSUP], the alien will be notified of the reasons for revocation of his or her release . . . [and] [t]he alien will be afforded an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification." Id. And § 241.4(*l*)(2) permits revocation "in the exercise of discretion when, in the opinion of the revoking official":

> (i)   The purposes of release have been served;
>
> (ii)  The alien violates any condition of release;
>
> (iii) It is appropriate to enforce a removal order or to commence removal proceedings against an alien; or
>
> (iv)  The conduct of the alien, or any other circumstance indicates that release would no longer be appropriate.

In this case, ICE cited two reasons for revocation: (1) Jean-Baptiste violated a condition of her release when the Miami-Dade Police Department arrested her on December 2, 2025, for drug-related charges; and (2) it is

5

appropriate to enforce her removal order. See Doc. 13-3 at 1. However, despite § 241.4(*l*)(1) requiring notice "[u]pon revocation," it appears ICE failed to provide Jean-Baptiste with a Notice of Revocation of Release and informal interview until March 2, 2026, nearly three months after ICE detained Jean-Baptiste and a month after Jean-Baptiste filed her Petition.[4] See Doc. 13-1 at 2–4.

Such a delay does not comply with the regulations. See Grigorian v. Bondi, No. 25-CV-22914-RAR, --- F. Supp. 3d ----, 2025 WL 2604573, at *9–10 (S.D. Fla. Sept. 9, 2025)[5] (finding that ICE's failure to provide an informal interview for over seventy-five days violated § 241.4(*l*)'s requirement to provide a prompt informal interview); see also Pham v. Warden, No. 1:25-CV-1873 DC AC, 2026 WL 673404, at *13 (E.D. Cal. Mar. 10, 2026), rep. & rec. adopted sub nom., 2026 WL 849861 (E.D. Cal. Mar. 27, 2026) ("An interview weeks or months after revocation of release is not a prompt initial informal interview." (quotation marks and citations omitted)); Bui v. Warden of the Otay Mesa Det. Facility, No. 25-CV-2111 JES DEB, 2025 WL 2988356, at *4 (S.D. Cal. Oct. 23,

---

[4] Although the Notice states that an ICE officer served Jean-Baptiste with the document on March 2, 2026, at 11:45 a.m., the detainee signature line is blank. See Doc. 13-3 at 3.

[5] The Court notes that although decisions of other district courts are not binding, they may be cited as persuasive authority. See Stone v. First Union Corp., 371 F.3d 1305, 1310 (11th Cir. 2004) (noting that, "[a]lthough a district court would not be bound to follow any other district court's determination, the decision would have significant persuasive effects.").

2025) (holding that an interview conducted four months after a petitioner's re-detention did not satisfy the "prompt" informal interview requirement under the regulations); M.S.L. v. Bostock, No. 6:25-CV-01204-AA, 2025 WL 2430267, at *11 (D. Or. Aug. 21, 2025) (concluding that an informal interview provided twenty-seven days after re-detention failed to comply with the regulations). As such, the Court finds Jean-Baptiste's re-detention violates the regulations designed to afford her due process, and she is entitled to release. See Grigorian, 2025 WL 2604573 at *10 (collecting cases). Therefore, the Court will grant the Petition on the OSUP claim in Count Three, and the Court need not, and does not, address Jean-Baptiste's remaining claims.[6] See Banks v. Dretke, 540 U.S. 668, 689 n.10 (2004) (declining to address an additional claim in a habeas petition after granting relief on another claim because "any relief [petitioner] could obtain on that claim would be cumulative").

## IV. Motion to Dismiss

In the Motion to Dismiss, Respondent Warden asks the Court to "dismiss [him] from this proceeding with prejudice" as an improper respondent. Motion to Dismiss at 12. He argues that ICE is Jean-Baptiste's "'immediate custodian'"

---

[6] Insofar as Jean-Baptiste requests attorney's fees, she may make such a request in a separate motion, if appropriate. See Local Rule 7.01, United States District Court, Middle District of Florida. Any such motion must be supported by a memorandum of law.

and "the director of ICE's local field office responsible for [Baker Correctional Institute] – not its 'warden' – is the proper respondent." Id.

There is much confusion and difference of opinions on who the proper respondent is when an immigration detainee files a § 2241 petition. The Court recognizes Respondent Warden's argument that while a warden may technically maintain day-to-day control of a facility, the warden does not have ultimate control over an immigration detainee's custody status, and a warden is ill-equipped to respond to a habeas petition and defend the federal government's interests. Nevertheless, the warden is the "immediate custodian" and presumably the individual who, upon ICE's direction, opens the door to release the detainee. Given the uncertainty and wide-ranging decisions on this particular issue, the Court declines to find that the warden is not a proper respondent. See, e.g., Vasquez v. Reno, 233 F.3d 688, 696 (1st Cir. 2000) ("[W]e hold that an alien who seeks a writ of habeas corpus contesting the legality of his detention by the INS normally must name as the respondent his immediate custodian, that is, the individual having day-to-day control over the facility in which he is being detained."); Pak v. Hoover, No. 3:26-CV-00379, 2026 WL 624165, at *1 n.1 (M.D. Pa. Mar. 5, 2026) (maintaining the warden as the only respondent, but recognizing that "the government will be bound by the [c]ourt's judgment because [the warden] is acting as an agent of the federal government by detaining [the petitioner] on behalf of [ICE]"); Cid-Barrios v. Raycraft, No.

25-13630, 2025 WL 3724377, at *4 (E.D. Mich. Dec. 24, 2025) ("[T]he Acting Director of Enforcement and Removal Operations for the USCIS Detroit Field Office, and not the administrator of the contract detention facility in Lake County, is the proper respondent to be named in a habeas corpus petition filed by a non-citizen challenging his detention under section 2241."); Krechmar v. Parra, No. 2:25-CV-01095-SPC-DNF, 2025 WL 3620802, at *2 (M.D. Fla. Dec. 15, 2025) (recognizing that "[t]he warden of Alligator Alcatraz would be ill-equipped to respond to the merits of [the petitioner's] claims and to be the sole defender of the federal government's interests" (emphasis added)); Beltran v. Raycraft, - - - F. Supp. 3d - - - , 2025 WL 3237429, at *11–12 (W.D. Mich. Nov. 20, 2025) (recognizing that while the Sixth Circuit has concluded that a noncitizen must generally name his immediate custodian, that is ICE's district director for the district in which he is confined, there are exceptions, such as naming the Secretary of DHS to ensure at least one respondent maintains authority over the petitioner's custody in the event he is transferred out of the district; dismissing all respondents other than the Secretary of DHS, including the warden of the facility at which the noncitizen was housed). As such, the Motion to Dismiss is due to be denied.

Accordingly, it is **ORDERED**:

1.     Jean-Baptiste's Verified Petition for Writ of Habeas Corpus (Doc. 1) is **GRANTED** as to the OSUP claim in Count Three. Respondents shall

release Jean-Baptiste **within 24 hours of this Order**, and they shall facilitate her transportation from the detention facility by notifying her counsel when and where she can be collected. Jean-Baptiste shall be subject to her preexisting Order of Supervision. The Petition (Doc. 1) is otherwise **DENIED without prejudice** as moot.

2.    Respondent Warden, Baker County Facility's Motion to Dismiss Petition for Writ of Habeas Corpus (Doc. 12) is **DENIED**.

3.    The **Clerk** is directed to terminate any motions; enter judgment granting the Petition as to the OSUP claim in Count Three and otherwise denying the remaining claims; and close the file.

**DONE AND ORDERED** at Jacksonville, Florida, this 24th day of April, 2026.

**MARCIA MORALES HOWARD**
United States District Judge

Jax-9 4/23
c:
Counsel of Record